UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
                                                                      :
INDIA BRANHAM,                                                        :          12-CV-1012 (ARR) (MDG)
                                                                      :
                              Plaintiff,                              :          NOT FOR PUBLICATION
                                                                      :
           -against-                                                 :          OPINION AND ORDER
                                                                      :
ISI ALARMS, INC., JAYSON WALLER, and                                 :
MONITRONICS INTERNATIONAL, INC.,                                     :
                                                                      :
                              Defendants.                             :
                                                                      :
--------------------------------------------------------------------- X

ROSS, United States District Judge:

       Plaintiff India Branham ("plaintiff") brought this action seeking damages under the

Telephone Consumer Protection Act ("TCPA") after defendants allegedly called her seventy-five

times seeking to collect a debt from another, unrelated person.  Currently before the court is

defendant Jayson Waller's ("Waller") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and

defendant Monitronics International, Inc.'s ("Monitronics") motion for summary judgment with

respect to contractual indemnity.  For reasons that will be described herein, Waller's motion is

denied and Monitronics' motion is granted.

## BACKGROUND

       ISI Alarms, Inc. ("ISI") is a corporation formed pursuant to the laws of North Carolina,

with its corporate headquarters located in Mooresville, NC.  Pl.'s Mem. in Opp'n to Def.'s Mot.

to Dismiss for Lack of Personal Jurisdiction ("Pl.'s Opp'n"), Ex. E, Dep. of Jayson Waller

("Waller Dep."), Dkt. #38-5, at 15.  ISI installs and provides monitoring services for home

security systems.  Id. at 26, Ex. D.  Jayson Waller, a resident of North Carolina, was the

1

president of ISI during the relevant time period.  Waller Dep. 10, 14.  Waller is the sole

shareholder of ISI.  Id. at 45.

In 2008, ISI entered into agreements with Monitronics regarding alarm monitoring

services.  Monitronics International, Inc.'s Local Rule 56.1 Statement of Material Facts ¶ 1.

Pursuant to the first of these agreements, the Alarm Monitoring Purchase Agreement ("AMPA"),

Monitronics purchased certain contracts for alarm monitoring from ISI.  Aff. of David Verret

("Verret Aff."), Dkt. #35-3, ¶ 3; see id., Ex. A.  Pursuant to the second agreement, the Master

Contract Monitoring Agreement ("MCMA"), Monitronics agreed to provide monitoring services

on alarm systems installed by ISI.  Id., Ex. C.  These agreements contained various

indemnification provisions, which will be discussed more fully below.

In February of 2011, ISI entered into a three-year contract for alarm monitoring ("the

Monitoring Agreement") with Leola Massiah and her daughter, Rene Massiah, neither of whom

are parties to this dispute.  Pl.'s Opp'n, Ex. D., at 2.  Both Massiahs signed the Monitoring

Agreement, which was for monitoring of an alarm system installed in Leola Massiah's

Wilmington, NC residence.  Id. at 2-3.  Rene Massiah's cell-phone number, which has a New

York area code, appears on the agreement as her only phone number.  Id.  Her Brooklyn, NY

address is listed as the billing address for the monthly monitoring fee.  Id. at 2.  ISI sent invoices

for these charges to Rene Massiah in Brooklyn from March 2011 to January 2013.  See id. at 2,

5-6; Pl.'s Opp'n 13.  Rene Massiah made regular payments on the account.  See Pl.'s Opp'n, Ex.

D., at 5-6.

On February 8, 2012, an ISI employee attempted to contact Rene Massiah regarding the

outstanding balance on her account and placed a call to the Brooklyn, NY cell-phone number she

had provided on the Monitoring Agreement.  Pl.'s Opp'n 1-2.[1]  Because that number had since

been re-assigned, the calls instead reached plaintiff's cell-phone.  Id.  During this initial call,

plaintiff informed the caller that she was not Rene and that no person named Rene could be

contacted via the number he had dialed.  Am. Compl. ¶ 34.  Plaintiff instructed the caller to stop

calling her and to remove her number from ISI's records.  Id. ¶¶ 34-36.  Plaintiff sent a cease-

and-desist letter regarding the calls to ISI on February 8, 2012 via fax and regular mail.  Pl.'s

Opp'n, Ex F.  In the letter, plaintiff, through counsel, advised ISI that its telephone operators

were reaching a wrong number.  Id.  Waller received the letter in the mail on or before February

9.  Waller Dep. 41-42; see Pl.'s Opp'n, Ex F, at 4.  Upon receiving the letter, Waller forwarded it

to his attorney, Robert Newkirk.  Waller Dep. 43-44.  Waller also later checked the ISI account

databases for plaintiff's last name, but because he could not find her name in ISI's records, he

took no further action.  See id. at 43.

ISI employees continued to call plaintiff's cell-phone in their attempt to contact Rene

Massiah, and plaintiff ultimately received at least seventy-five telephone calls between February

8, 2012 and February 13, 2012.  Am. Compl. ¶ 26.  Plaintiff filed suit against ISI and Waller

individually on February 29, 2012, alleging, inter alia, violations of the TCPA, 47 U.S.C. § 227,

and intentional infliction of emotional distress.  Compl., Dkt #1, at 1, 7, 11.  Plaintiff

---

[1]According to the amended complaint, some of the calls plaintiff received originated
from a phone number associated with ISI and some originated from a number associated with
Monitronics.  Am. Compl. ¶ 27-29.  David Verret, vice-president of Monitronics, stated in an
affidavit that at the time the calls to Rene Massiah were attempted, Monitronics had returned the
account to ISI, so only ISI would have attempted to make contact with Rene Massiah.  Verret
Aff. ¶ 8.  Verret did not state the basis for his knowledge of this fact and no other evidence is
provided in the record to support this assertion.  Whether ISI or Monitronics initiated the calls,
however, is ultimately not material to deciding either of the instant motions.

3

subsequently filed an amended complaint, adding Monitronics as a defendant.  Am. Compl. ¶ 2-4.  Monitronics answered and cross-claimed against ISI and Waller for indemnification.  Dkt. #15, at 9-14.  The parties conducted limited discovery on the issue of jurisdiction prior to Waller bringing his motion to dismiss.

## DISCUSSION

I.    *Waller's Motion to Dismiss Pursuant to Rule 12(b)(2)*

Waller answered plaintiff's amended complaint, Dkt. #21, and subsequently filed a motion to dismiss for lack of personal jurisdiction, Dkt. #28.  Plaintiff resists the motion on three grounds: First, she argues that Waller waived the defense of lack of personal jurisdiction by failing to preserve the defense in his answer.  Pl.'s Opp'n 6-10.  Second, she argues that the court has personal jurisdiction over Waller because he transacted business in New York through ISI acting as his agent.  Id. at 10-12.  Third, she argues that the court has personal jurisdiction over Waller because he, again through ISI, committed a tort outside New York causing injury within the state.  Id. at 12-16.  Notably, ISI does not contest personal jurisdiction in this case.  See Answer to Am. Compl. by ISI Alarms NC, Inc., Dkt. #20.  For his part, Waller argues that he did not personally transact business in New York and that due process considerations should prevent the court from exercising jurisdiction over him.  Mem. of Def. Jayson Waller in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12 ("Mot. to Dismiss") 5-6.[2]

a.    Waiver of Defense

The defense of lack of personal jurisdiction is a threshold defense that must be raised in the defendant's first responsive pleading, or it is waived.  Fed. R. Civ. P. 12(h); Transaero, Inc.

---

[2]Waller did not reply to plaintiff's argument for jurisdiction based on tort.

v. La Fuerza Aerea Boliviana, 162 F.3d 724, 730 (2d Cir. 1998).  The parties dispute whether

Waller preserved his defense based on the language of his "Second Affirmative Defense," which

stated, "That the Court lacks jurisdiction over the person by reason of ineffective service of

process."  Answer of Def. Jayson Waller ("Waller Answer") 1.  Waller argues that this sentence

preserved both a Fed. R. Civ. P. Rule 12(b)(2) defense of lack of personal jurisdiction and a Rule

12(b)(5) defense of ineffective service of process, however "inartfully."  Mot. to Dismiss 8-9.

Plaintiff argues that it only preserved a Rule 12(b)(5) defense for ineffective service of process.

Pl.'s Opp'n 8.

Although the defenses of lack of personal jurisdiction and ineffective service of process

are "closely interrelated," 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. §

1353 (3d ed. 2009), the two defenses are distinct and must be raised separately.  See Santos v.

State Farm Fire & Cas. Co., 902 F.2d 1092, 1095-96 (2d Cir. 1990) (holding answer that "baldly

state[d] that the court lacked personal jurisdiction over" defendant was insufficient to raise

defense of ineffective service of process).  Nevertheless, even if Waller's "Second Affirmative

Defense" failed to preserve a 12(b)(2) defense, Waller raised each defense separately elsewhere

in his answer.  See Waller Answer 9-10 ("Waller respectfully prays [that t]his action be

dismissed as to Defendant Waller for lack of personal jurisdiction . . . [and that t]his action be

dismissed as to Defendant Waller for insufficient service of process.").  Defenses need not be

labeled as "affirmative defenses" in a defendant's answer, so long as they appear somewhere

within the first responsive pleading.  See 5B Wright & Miller, Fed. Prac. & Proc. § 1351 ("In

keeping with the spirit of the federal rules, the precise title of the movant's objection should not

prevent the district court from considering and deciding the personal jurisdiction motion

according to its substance rather than on the basis of its designation."); see also Transaero, 162 F.3d at 727 (objection to personal jurisdiction asserted in a footnote of the first responsive pleading held sufficient to preserve defense.).  As Waller clearly articulated a defense of lack of personal jurisdiction separate from any challenge to service of process, he properly preserved his right to challenge the court's jurisdiction over his person.  The court now considers the merits of his motion to dismiss.

        b.    <u>Merits</u>

Plaintiff contends that the court has specific jurisdiction over Waller.  Specific personal jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."  Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n. 8 (1984)).  To determine whether specific personal jurisdiction exists over a non-domiciliary in a case involving a federal question, the court must engage in a two-step analysis.  See Fed. R. Civ. P. 4(k)(1)(a); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002).  First, the court must decide if jurisdiction is proper under the relevant provision of the New York long-arm statute.  Bank Brussels Lambert, 305 F.3d at 124.  If the court finds jurisdiction under the statute, it must then decide if exercising personal jurisdiction comports with the Due Process Clause of the United States Constitution.  Id.; see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 463 (1985).

The standard plaintiff must meet to defeat a defendant's motion to dismiss for lack of personal jurisdiction "varies depending on the procedural posture of the litigation."  Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., --- F.3d ---, No. 12-770-CV, 2013 WL 3335784 at *3 (2d Cir.

July 3, 2013) (internal quotation marks omitted).  Here, where limited discovery on jurisdictional

matters has been completed but no evidentiary hearing has been held, plaintiff need only make a

prima facie showing of jurisdiction to defeat a motion to dismiss.  Id.  This prima facie showing

must include an averment of facts that, if true, would suffice to establish jurisdiction over the

defendant.  Id.  The court considers the pleadings and affidavits in the light most favorable to

plaintiff, resolving all doubts in her favor.  Id.

        1.        Jurisdiction Under New York's Long-Arm Statute

Section 302 of New York's Civil Practice Law and Rules provides in pertinent part:

> (a) As to a cause of action arising from any of the acts enumerated in this section,
> a court may exercise personal jurisdiction over any non-domiciliary, . . . who in
> person or through an agent:
>
> (1) transacts any business with the state or contracts anywhere to supply goods or
> services within the state; or . . .
>
> (3) commits a tortious act without the state causing injury to a person or property
> within the state, except as to a cause of action for defamation of character arising
> from the act, if he . . .
>
> (ii) expects or should reasonably expect the act to have consequences in the state
> and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. §302.  Waller argues jurisdiction over him is inappropriate under the statute

because he personally conducts no business in New York, nor did he place any calls to plaintiff's

New York cell-phone number.  Mot. to Dismiss 5.  However, both the statute and New York

case law permit the exercise of jurisdiction over a defendant based on the acts of his "agent" in

the state.  N.Y. C.P.L.R. § 302(a); see Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 44 (N.Y.

1988)); accord Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988) (noting

New York Court of Appeals rejected the "fiduciary shield" doctrine in Kreutter and held that a

corporation may act as an agent for its individual officers for purposes of § 302(a)(1)); Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) (noting that, although Kreutter involved § 302(a)(1), it "made clear that its holding applied to the entire long-arm statute").

In determining whether a corporation acted as an agent of its officer, the court must examine "'the realities of the relationship in question rather than the formalities of agency law.'" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. BP Amoco P.L.C., 319 F. Supp. 2d 352, 360 (S.D.N.Y. 2004) (quoting CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986). For the purposes of personal jurisdiction, "an agent is a person or entity that acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some control." Id. (internal citation and quotation marks omitted).  Applying the New York agency test to this case, the court must determine whether ISI "engaged in purposeful activities in this State in relation to [plaintiff's] transaction for the benefit of and with the knowledge and consent of" Waller and Waller "exercised some control over" ISI in the matter.  Kreutter, 522 N.E.2d at 44.[3]

A.     Purposeful Activities for the Benefit of Waller

Courts examining whether a corporation engaged in "purposeful activities" in New York as part of this agency test have generally analyzed whether the corporation transacted business in

---

[3]A recent decision of the Second Circuit included language suggesting that the first prong of the Kreutter test required a showing of purposeful activities in the forum state by the individual, rather than the corporation.  Chloé, 616 F.3d at 168.  However, in applying the test, the Circuit cited the benefits that the individual derived from the corporation's purposeful activities in the forum, as well as the individual's control over the corporation.  Id. at 168-69. Therefore, although the court articulated the agency test differently from Kreutter, the test it actually applied was no different from Kreutter.  Accordingly, to the extent the Circuit's opinion in Chloé contains a gloss on the Kreutter test, any variation in the test is dicta, and the court applies the test as articulated in Kreutter.

8

New York or committed a tort causing an injury within the state, tracking the provisions of the long-arm statute. See, e.g., Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 36 (2d Cir. 2001) (proposed sales of defendants' coats to New York department store were purposeful activities); Retail Software Servs., 854 F.2d at 20, 22 (defendant engaged in purposeful activities by registering and soliciting franchise sales in New York); Arch Speciality Ins. Co. v. Entm't Speciality Ins. Servs. Inc., No. 04 Civ. 1852(RCC), 2005 WL 696897, at *3 (S.D.N.Y. Mar. 24, 2005) (procuring insurance policy from New York company was purposeful activity); Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (tortiously interfering with plaintiffs' New York contracts was purposeful activity). Thus, although ISI does not contest jurisdiction in this case, the court will examine its activities through the provisions of § 302(a). As will be seen, the record produced on limited discovery makes clear that ISI engaged in purposeful activities in New York by transacting business in the state and committing a tort without the state that caused injury within the state.

New York courts define transacting business as "'some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws.'" Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (quoting McKee Elec. Co. v. Rauland-Borg Corp., 229 N.E.2d 604, 607 (N.Y. 1967)). No single event or contact connecting the defendant to New York need be demonstrated for a showing of purposeful availment; rather, the court should consider the totality of all the defendant's contacts with the forum. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005). However, a single transaction may suffice to demonstrate purposeful availment in certain circumstances. See id. (citing Parke-Bernet Galleries, Inc. v.

Franklyn, 256 N.E.2d 506, 507-08 (N.Y. 1970)).   The Second Circuit has identified several

factors that are relevant to the purposeful availment inquiry:

> (i) whether the defendant has an on-going contractual relationship with a New
> York [domiciliary], (ii) whether the contract was negotiated or executed in New
> York, and whether, after executing a contract with a New York business, the
> defendant has visited New York for the purpose of meeting with parties to the
> contract regarding the relationship, (iii) what the choice-of-law clause is in any
> such contract, and (iv) whether the contract requires [defendant] to send notices
> and payments into the forum state . . . .

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)

(citations omitted).

Moreover, it is well settled that physical presence in New York is not necessary to

transact business in the state.  Imagine Solutions, LLC v. Med. Software Computer Sys., Inc.,

No. 06 CV 3793(ARR)(JMA), 2007 WL 1888309, at *5 (E.D.N.Y. June 28, 2007).  In

Firschbarg v. Doucet, 880 N.E.2d 22 (N.Y. 2007), defendants were California residents who

retained plaintiff, a New York attorney, for representation in litigation taking place in federal

court in Oregon.  Id. at 24.  Defendants never entered New York, but they "repeatedly

communicated with plaintiff in New York" by telephone, fax, and email.  Id. at 24-25.  The New

York Court of Appeals held that "[t]he quality of defendants' contacts here establishes a

transaction of business in New York."  Id. at 27.  The court emphasized that the defendants'

"New York contacts comprised 'the purposeful creation of a continuing relationship with a New

York [domiciliary].'"  Id. (quoting George Reiner & Co. v. Schwartz, 363 N.E.2d 551, 554 (N.Y.

1977)).

Here, similarly, "[a] continuing relationship was . . . contemplated and created," id., with

Rene Massiah, a New York resident.  ISI executed the Monitoring Agreement with Rene

Massiah, with her Brooklyn, NY address listed as the billing address for the account.  Pl.'s

Opp'n, Ex. D., at 2.  Both Leola Massiah and Rene Massiah were listed as "Customer[s]" in the

Monitoring Agreement.  Id.  Part of ISI's obligations under the agreement involved "notifying

Customer" in the case of an alarm signal from the premises.  Id.  The record shows that ISI

charged Rene Massiah monthly for alarm monitoring on Leola Massiah's house from March

2011 to January 2013.  Id. at 5-6.  Further, ISI made numerous attempts (no less than seventy-

five) to contact Rene Massiah to collect outstanding debts on her account.[4]  Like the defendants

in Firschbarg, ISI created an ongoing contractual relationship with a New York resident, which

included monthly billing and communication directed to New York, for work to be performed

outside of New York.  Although the defendants in Firschbarg were the ones who retained the

New York plaintiff while the record here is silent on whether ISI solicited Rene Massiah's

business, "it is not necessarily who initiated contact that is determinative, but rather, the nature

and quality of the contacts and the relationship established as a result, based on the totality of the

_____

[4]The calls themselves may also be seen as a transaction of business in New York.  While
telephone calls and other communications sent into New York by an out-of-state defendant,
taken alone, are insufficient to establish a transaction of business, Hughes v. BCI Int'l Holdings,
Inc., 452 F. Supp. 2d 290, 300 (S.D.N.Y. 2006), "[i]f the purpose of the calls is for the defendant
to actively participate in business in New York, then they alone may support a finding of New
York long arm jurisdiction," DirecTV Latin Am., LLC v. Park, 610, LLC, 691 F. Supp. 2d 405,
420 (S.D.N.Y. 2010) (alteration in original) (internal quotation marks omitted); see also
Parke-Bernet Galleries, 256 N.E.2d at 509 (exercising long-arm jurisdiction over defendant who
participated in a New York auction by means of open telephone line).  Here, the purpose of the
phone calls was to collect a debt, which some courts have held is sufficient for a transaction of
business under § 302(a)(1).  See Fava v. RRI, Inc., No. 96-CV-629 RSP/DNH, 1997 WL 205336
at *2 (N.D.N.Y. Apr. 24, 1997); cf. Sluys v. Hand, 831 F. Supp. 321, 324 (S.D.N.Y. 1993)
(written communication regarding debt collection sufficient to confer jurisdiction).  Even if
insufficient on their own, however, the calls were placed as part of ISI's ongoing contractual
relationship with Rene Massiah.

circumstances."  Grimaldi v. Guinn, 895 N.Y.S.2d 156, 167 (App. Div. 2010).[5]  ISI's ongoing

contractual relationship with Rene Massiah establishes that ISI engaged in purposeful activities

in New York.

Further, ISI's commission of a tort directed to New York may be seen as purposeful

activity in the state.  "TCPA claims are statutory tort claims."  Cayanan v. Citi Holdings, Inc.,  ---

F. Supp. 2d ---, No. 12-CV-1476-MMA(JMA), 2013 WL 784662, at *20 (S.D. Cal. Mar. 1,

2013); see C-Mart, Inc. v. Metro. Life Ins. Co., No. 4:13CV00052 AGF, 2013 WL 2403666, at

*4 (E.D. Mo. May 31, 2013) (holding tort occurred where defendant sent fax in violation of

TCPA.  As noted above, C.P.L.R. § 302(a)(3) permits the exercise of jurisdiction over a party

that commits a tort outside the state that causes injury within the state, so long as the

consequences of the tort were reasonably foreseeable and the tortfeasor derives substantial

revenue from interstate commerce.  N.Y. C.P.L.R. § 302(a)(3)(ii).  Plaintiff does not argue that

any of the calls to her cell-phone originated from within New York.  See Pl.'s Opp'n 14.

Therefore, the court must determine whether these out-of-state phone calls caused injury to

plaintiff within New York for purposes of § 302(a)(3).  In making such a determination, courts

"apply a situs-of-injury test, which asks them to locate the 'original event which caused the

injury.'"  Bank Brussels Lambert, 171 F.3d at 791 (quoting Hermann v. Sharon Hosp., Inc., 522

N.Y.S.2d 581, 583 (App. Div. 1987)).  The "original event" causing injury is distinguished from

_____

[5]The court acknowledges that the Monitoring Agreement also contained the name and
contact information of a non-New York resident, Leola Massiah.  This inclusion does not defeat
jurisdiction, however, because the New York Court of Appeals has held that where a defendant
chooses to deal directly with a New York resident rather than her local counterpart, as ISI did in
its billing on the Massiah account, "long-arm jurisdiction may be upheld."  Deutsche Bank Sec.,
Inc. v. Mont. Bd. Of Invs., 850 N.E.2d 1140, 1143 (N.Y. 2006).

the initial tort, which, in this case, occurred wherever the phone calls were placed.  Id.  The

question, then, is whether the "original event" causing injury occurred where plaintiff received

the calls – in New York.

The court has not located a case upholding personal jurisdiction under § 302(a)(3) based

on a TCPA violation committed without the state, but several analogous situations involving

communication into New York are instructive.  First, in cases of fraud committed in another state

that involved misrepresentations communicated into New York, the Second Circuit has noted

that courts have "often found that the situs of injury is New York when the original reliance or

other first event causing the injury occurs in New York."  Id. at 792.  Similarly, in wrongful

termination claims, "the Second Circuit has concluded that the execution of a decision to

terminate an employee . . . is the 'initial tort,' while the experience of being removed from a

job-felt at the employee's workplace-is the 'original event' causing injury."  Rylott-Rooney v.

Alitalia-Linee Aeree Italiane-Societa Par Azioni, 549 F. Supp. 2d 549, 553-54 (S.D.N.Y. 2008)

(citing DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001)).  In addition, district

courts have found that harassing phone calls made outside the state to a New York plaintiff

"satisfy[] the threshold requirement of" § 302(a)(3), Davis v. Masunaga Grp., Inc., 204 F. Supp.

2d 665, 666 (S.D.N.Y. 2002), and that the situs-of-injury for an unfair competition claim was the

state to which the defendant sent disparaging emails, Symmetra Pty Ltd. v. Human Facets, LLC,

No. 12 Civ. 8857(SAS), 2013 WL 2896876, at *8 (S.D.N.Y. June 13, 2013).  Analogizing from

these cases, the situs of plaintiff's injury based on ISI's violation of the TCPA was where

plaintiff received the calls; in New York.[6]  Accordingly, jurisdiction over ISI is warranted under

C.P.L.R. § 302(a)(3).  Thus, under both §§ 302(a)(1) and 302(a)(3), ISI engaged in purposeful

activities in New York.

It is also clear from the record that ISI's personal activities in New York were for

Waller's benefit.  A transaction of business is for a corporate officer's benefit if he stands to

personally profit from that transaction.  See Karabu, 16 F. Supp. 2d at 326 n.6; Kinetic

Instruments, 802 F. Supp. at 985.  A controlling shareholder of a closely held corporation stands

to personally profit from activities that increase a corporation's profit.  Karabu, 16 F. Supp. 2d at

326 n.6, Kinetic Instruments, 802 F. Supp. at 985-86.  Waller was the one hundred percent

shareholder of ISI.   Waller Dep. 45.  As such, he stood to benefit from ISI's contractual

relationship with Rene Massiah and its collection of outstanding debts on her account.

B.      Knowledge and Consent; Control

Because the same facts in this case bear on "knowledge and consent" and "control," the

two questions may be considered simultaneously.  See Karabu, 16 F. Supp. 2d at 326 n.6 ("The

same considerations which lead this Court to conclude that the plaintiffs have not satisfied the

"control" prong of Kreutter, indicate that plaintiffs also have not satisfied the "knowledge" and

---

[6]The additional requirements for establishing jurisdiction under the second subsection to
C.P.L.R. § 302(a)(3) are plainly met here.  See Sole Resort, S.A. de C.V. v. Allure Resorts
Mgmt., LLC, 450 F.3d 100, 106 (2d Cir. 2006) (jurisdiction under § 302(a)(3)(ii) also requires
that (1) the cause of action arose from the tortious act, (2) that the defendant expected or should
reasonably have expected the act to have consequences in the state, and (3) that the defendant
derives substantial revenue from interstate commerce).  The cause of action here arises from
defendants' violation of the TCPA; ISI knew it was calling a New York number and therefore
should reasonably have foreseen any consequences of that call would be felt in New York; and
ISI did business in nine states, Waller Dep. 26, thus deriving substantial revenue from interstate
commerce.

"consent" prongs of the agency test.").  It is clear from the record that Waller gained knowledge of the calls being made to plaintiff through plaintiff's cease-and-desist letter.  See Waller Dep. 41-42.  Waller acknowledged that he read the letter, but did "[n]othing" other than forward the letter to his attorney.  Id. at 42.  These facts support a prima facie showing that Waller had knowledge of ISI's activities and consented to them.  See Kinetic Instruments, 802 F. Supp. at 985 (holding allegations that individual had "specific knowledge" of patent-infringing product and directed company to continue to manufacture product were sufficient to show knowledge and consent).

 "To make a prima facie showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary' actor in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation."  Karabu, 16 F. Supp. at 324; see also Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) (plaintiff must show that defendant "personally took part in the activities giving rise to the action at issue").  Waller maintained such control over the transaction at issue.  Waller's secretary showed him plaintiff's letter because "when she gets a letter like this . . . [s]he shows me a copy of it."  Waller Dep. 42.  Waller stated that while he delegated certain matters to other ISI employees, he retained "some control" over those employees as president of the company.  Id. at 46.  In addition, Waller exercised control specifically over the transaction involving plaintiff, as he forwarded her letter to his attorney and later searched ISI's account databases for plaintiff's name.  Id. at 43.  These facts are sufficient to make out a prima facie showing that Waller exercised some control over plaintiffs' transaction.  See Arch Speciality Ins. Co., 2005 WL 696897, at *3 (fact that defendant

15

"had the authority" to stop a particular course of conduct shows that defendant exercised control).

Accordingly, given that ISI engaged in purposeful activities in New York in relation to plaintiff's claim (which would permit jurisdiction over ISI), and given that Waller benefitted from those activities, had knowledge of and consented to those activities, and exercised some control over ISI in the matter, ISI's actions in New York may be imputed to Waller, and the court may exercise personal jurisdiction over him under the long-arm statute.

2.    Due Process

As the court finds it has jurisdiction over Waller under the New York long-arm statute, it must now determine if exercising this jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  Chloé, 616 F.3d at 171.  There are two components to this analysis: (1) minimum contacts and (2) reasonableness.  Id.

In evaluating a defendant's minimum contacts with a forum, the crucial question is whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Burger King, 471 U.S. at 475 (internal quotation marks omitted), "such that [the defendant] should reasonably anticipate being haled into court there," id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).  The same facts that support the court's finding that ISI transacted business in New York support a finding that Waller, through ISI, purposely availed himself of the privilege of conducting activities within the forum.  See Chloé, 616 F.3d at 171 (same facts that establish that agent corporation transacted business in New York support finding that jurisdiction over individual comports with due

16

process); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he

constitutional requirements of personal jurisdiction are satisfied because application of N.Y.

C.P.L.R. § 302(a) meets due process requirements.").  ISI contracted with a New York resident

to provide alarm monitoring in exchange for payment, which would be billed monthly to a New

York address.  The contract contemplated making phone calls to Rene Massiah's New York

phone number in the case of an alarm signal.  ISI, and by extension Waller, should reasonably

have anticipated that if a dispute arose with regard to payment on the account, they might be

haled into court in New York to resolve the dispute.  Moreover, since "[t]he TCPA is essentially

a strict liability statute," Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 776 (11th

Cir. 2011), which prohibits the use of any automatic dialing system or prerecorded or artificial

voice to a cell-phone, 47 U.S.C. § 227(b)(1)(A)(iii), defendants reasonably should have

anticipated that the use of such a system to call a New York cell-phone number could subject

them to being haled into court in New York.[7]  The court thus finds that Waller's purposeful

availment, through ISI, of the privilege of conducting activities within New York is sufficient to

meet the minimum contacts test of the Due Process Clause.

Upon a finding of minimum contacts, the exercise of jurisdiction is favored, but may be

defeated where the defendant presents "a compelling case that the presence of some other

considerations would render jurisdiction unreasonable."  Burger King, 471 U.S. at 477.  The

Supreme Court has enumerated five factors the court should use in evaluating the reasonableness

of a particular exercise of jurisdiction: (1) the burden that the exercise of jurisdiction will impose

---

[7]As it would on any motion to dismiss, see Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)
(per curiam), the court accepts as true plaintiff's allegation that an automatic dialing system and
prerecorded voice were used here.  See Am. Compl. ¶ 51.

on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 113-14 (1987).  Although Waller lists these factors in his motion to dismiss, Mot. to Dismiss 7, he presents no specific arguments or evidence addressing any one factor.

Based on its independent analysis of the five factors, the court finds that jurisdiction is reasonable.  With regard to the first factor, the court finds no additional burden on the defendant.  Although it may inconvenience Waller to travel New York for trial, he is likely to have to do so anyway in this proceeding since ISI has consented to jurisdiction and, as president and sole shareholder (as well as recipient of plaintiff's cease-and-desist letter), Waller is likely to be an important witness in the case.  The second and third factors favor New York, since plaintiff is a resident of New York and "a state frequently has a 'manifest interest in providing effective means of redress for its residents.'"  Chloé, 616 F.3d at 173 (quoting Burger King, 471 U.S. at 483).  The fourth and fifth factors do not clearly favor one forum over another.  The court consequently finds that Waller has not presented a compelling case that exercise of jurisdiction over him would be unreasonable.

For the foregoing reasons, the court finds that exercising jurisdiction over Waller is permitted by New York's long-arm statute and comports with due process.  Waller's motion to dismiss is therefore denied.

II.    *Monitronics' Motion for Summary Judgment as to Contractual Indemnity*

Monitronics has moved for summary judgment for contractual indemnity.  Dkt. #33; see

generally Dkt. #36.  ISI filed no opposition to Monitronics' motion.  Plaintiff initially opposed

Monitronics' motion but subsequently withdrew her opposition.  See Dkt. #48 (letter from

Monitronics' counsel stating plaintiff is withdrawing Dkt. ## 44, 45, & 46).  The court therefore

considers only Monitronics' unopposed motion.

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The function of the court is not to resolve disputed issues, but to determine

whether there is a genuine issue to be tried.  See Anderson v. Liberty Lobby. Inc., 477 U.S. 242,

249 (1986).  In assessing whether summary judgment is appropriate, the court considers "the

pleadings, depositions, answers to interrogatories and admissions on file, together with any other

firsthand information including but not limited to affidavits."  Nnebe v. Daus, 644 F.3d 147, 156

(2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003))

(internal quotation marks omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party carries the burden of proving that there is no genuine dispute respecting any

material fact.  See Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d

Cir. 1994).  Once this burden is met, in order to avoid the entry of summary judgment against it,

the nonmoving party "must come forward with specific facts showing that there is a genuine

issue for trial."  LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998).

Monitronics presented the affidavit of its vice-president, David Verret, to which it

appended two contracts that governed its relationship with ISI: the AMPA, Verret Aff., Ex. A,

19

and the MCMA, id., Ex. C.  Both of these documents were signed by Waller for ISI.  Dkt. #35-3,

at 28; id. at 38.[8]  The AMPA contains a provision that states in relevant part:

> Seller [ISI] shall be solely responsible for complying with all laws, rules,
> regulations, statutes, orders and ordinances applicable to its business and
> operations and shall indemnify, defend and hold Purchaser [Monitronics]
> harmless from and against all liability, damages, loss, cost or expense (including
> reasonable attorneys' fees) which may be asserted against Purchaser as a result of
> the failure of Seller to be so in compliance.

Id. at 20.  The MCMA contains a provision that states in relevant part:

> Dealer [ISI] agrees to indemnify, defend and hold Company [Monitronics]
> harmless from any and all claims and lawsuits, including the payment of all
> damages, expenses, costs, and attorney's fees, whether these claims be based
> upon alleged intentional conduct, negligence, contribution, indemnification, or
> strict or product liability.

Id. at 37.

The AMPA also contains a choice of law clause stating that the agreement and any

addendum shall be governed by and construed in accordance with the laws of the State of Texas.

Id. at 18.  Since the court's jurisdiction in this case is based on a federal question, it is unclear

whether the court should apply federal common law choice of law rules or state choice of law

rules.  See Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 12 (2d Cir. 1996) ("[T]he law

is unsettled when it comes to applying either a federal common law choice of law rule or state

choice of law principles in non-diversity cases.").  However, where both federal common law

and state choice of law approaches require application of the same jurisdiction's law, there is no

conflict and the court simply applies that jurisdiction's law.  See Pignoloni v. Gallagher, No.12-

CV-3305 (KAM)(MDG), 2012 WL 5904440, at *21 (E.D.N.Y. Nov. 25, 2012).  Since both

---

[8]The court refers to the ECF page numbers for both contracts.

federal common law and New York choice of law rules require applying Texas contract law,[9] the

court applies Texas law to interpret and construe the indemnity provisions in the contracts.

Under Texas law, "[i]ndemnity agreements must be strictly construed, pursuant to the

usual principles of contract interpretation, in order to give effect to the parties' intent as

expressed in the agreement." E.I. Du Pont De Nemours & Co. v. Shell Oil Co., 259 S.W.3d 800,

805 (Tex. App. 2007). So construing the contracts, it is clear that the plain language of the

indemnity provision in the AMPA reflects the intent of the parties to indemnify Monitronics for

violations of the TCPA, since the TCPA is a statute applicable to ISI's business and operations.

Accordingly, ISI agreed to indemnify Monitronics as to plaintiff's first cause of action. As to

plaintiff's second cause of action, for intentional infliction of emotional distress, the indemnity

provision in the MCMA reflects an intent of the parties to indemnify Monitronics against such

intentional tort claims. Monitronics has thus met its burden of showing there is no genuine

dispute as to the material facts regarding contractual indemnity. As no party has opposed the

motion, or otherwise "come forward with specific facts showing that there is a genuine issue for

---

[9]Courts applying federal common law choice of law rules look to the Restatement (Second) of Conflict of Laws, id., which provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1). Here, the contract deals explicitly with indemnification, so the federal common law choice of law rule requires the court to apply Texas law. Applying the state choice of law rules of the state in which this court sits, "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000). Because Monitronics maintains its principal place of business in Texas and the agreement specifies Texas as the forum of choice, "which create[s] sufficient contacts with Texas," Torain v. Clear Channel Broad., Inc., 651 F. Supp. 2d 125, 138 (S.D.N.Y. 2009), New York choice of law rules also require application of Texas law.

trial," <u>LaBounty</u>, 137 F.3d at 73, summary judgment is warranted.  Monitronics' motion is therefore granted.

## CONCLUSION

For the foregoing reasons, defendant Waller's motion to dismiss is denied and defendant Monitronics' motion for summary judgment for contractual indemnity is granted.

SO ORDERED.

/s/_____
Allyne R. Ross
United States District Court

Dated:  August 30, 2013
        Brooklyn, New York

22